

600 Third Avenue, 42nd Floor, New York, NY 10016 • (212) 684-0199

April 13, 2020

Gabriel Levinson
212.413.2853
212.202.7582 Fax
glevinson@polsinelli.com

The Honorable Lewis J. Liman
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *Pacelli, et al. v. Augustus Intelligence, Inc.*, **Case No. 1:20-cv-01011-LJL**

Dear Judge Liman:

    I write on behalf of Plaintiffs Marco Pacelli and Ed Crump pursuant to the Court's March 20, 2020 order, requesting the parties to brief: (i) whether an arbitrator must decide the issue of arbitrability and (ii) the effect of the employment agreements' requirement that the parties "endeavor first to settle [a] dispute by mediation" before "any unresolved controversy or claim" is "settled by arbitration"; and permitting Plaintiffs to respond to the arguments raised in Defendant Augustus Intelligence, Inc.'s ("Augustus" or "Defendant") March 20, 2020 letter to the Court.

### 1. The Parties Did Not Agree to Delegate Arbitrability Decisions to the Arbitrator.

    "[P]ersons involved in a dispute are ordinarily entitled to have access to a court for the resolution of the dispute." *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 190–91 (2d Cir. 2019) (citation omitted). "The right of access to courts is of such importance that courts will retain authority over the question of arbitrability of the particular dispute unless 'the parties **clearly and unmistakably** provide' that the question should go to arbitrators." *Id.* (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)) (emphasis added). The court's retention of authority over the threshold issue of arbitrability minimizes "the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." *Id.* at 83–84. As the Second Circuit explained, "[w]ere the courts to cede to arbitrators resolution of the arbitrability of the dispute (absent the clear and unmistakable agreement of the parties to that effect), this would incur an unacceptable risk that parties might be compelled to surrender their right to court adjudication, without their having consented." *Id.*; *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995) ("[G]iven the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.").

    The arbitration provisions here do not "clearly and unmistakably" delegate to arbitrators the authority to determine their own jurisdiction. The provisions provide that "[i]f a dispute arises

from or relates to this contract or the breach thereof," it must first go to mediation administered by AAA using its Employment Mediation Procedures. ECF No. 5-2 at 19. After sixty days, any dispute "unresolved" in the mediation will then be arbitrated. *Id*. Thus, the provisions *do not expressly delegate* jurisdictional authority to the arbitrator.

Nor do the provisions *implicitly delegate* such authority. While the Second Circuit has held on certain, specific facts that otherwise silent arbitration agreements can implicitly delegate jurisdictional authority to the arbitrator, *see PaineWebber Inc. v. Bybyk*, 81 F. 3d 1193 (2d Cir. 1996), the arbitration provisions at issue here are easily distinguishable from the arbitration agreement at issue in *Bybyk*. There, the Second Circuit primarily relied on two provisions, which (i) commanded that "any and all controversies concerning . . . the construction, performance, or breach of this or any other agreement . . . shall be determined by arbitration" and (ii) provided that the parties were "waiving their right to seek remedies in court." *Id*. at 1199. Neither of these provisions is applicable here. *First*, the language used here to define the scope of disputes subject to the mediation/arbitration provision—*i.e.*, "[i]f a dispute arises from or relates to this contract or the breach thereof"—is considerably narrower than the "any and all" language in *Bybyk*. Indeed, the Second Circuit's post-*Bybyk* case law essentially treats the "any and all" language as a term of art. *See, e.g.*, *John Hancock Life Ins. Co. v. Wilson*, 254 F. 3d 48, 55 (2d Cir. 2001) (stating that "parties may overcome the *First Options* presumption by . . . employ[ing] the 'any and all' language described in *Bybyk*"). That critical language is absent here. *Second*, also unlike *Bybyk*, the arbitration provisions here do not waive Plaintiffs' rights to seek remedies in court. To the contrary, the waiver language in the provisions at issue solely concerns waiving rights to a jury or bench trial, *and only with respect to claims that are subject to arbitration*. ECF No. 5-2 at 19.

The two-stage structure of the arbitration provisions further demonstrate the parties' intent. The mediation/arbitration framework is only workable if the Court retains jurisdiction to determine which claims are subject to the provision. Specifically, the arbitration provisions require that covered disputes first be submitted to mediation under AAA's Employment Mediation Procedures before they are submitted for arbitration. But AAA's Employment Mediation Procedures do not expressly provide either AAA or the mediator with the authority to determine whether a dispute falls within the scope of the mediation provision. Moreover, AAA's rules, which require the mediator to "conduct the mediation based on the principle of party self-determination," are inconsistent with any grant of implicit authority to the mediator to resolve disputes about whether a particular claim is subject to mediation. AAA Employment Mediation Procedure M-8(i), *available at*, http://adr.org/sites/default/files/EmploymentRules_Web_2.pdf (page 31). Since the mediator is not authorized to determine whether a dispute is subject to mediation, the arbitration provisions can only be read as retaining Courts to decide in the first instance whether a particular dispute is subject to mediation and arbitration (since only a subset of "unresolved" issues from the mediation can be submitted for arbitration).

Finally, to the extent there is any ambiguity whether the parties intended to delegate arbitrability decisions to the arbitrator (and there is not on this record), such ambiguity must be resolved against delegation. *First Options of Chicago, Inc.*, 514 U.S. at 945. Accordingly, there is no basis for the Court to find here that the parties delegated arbitrability decisions.

2. **The Legal Effect of the Parties' Agreement to Mediate.**

The arbitration agreements' mediation provision has no legal effect on the issues before the Court. The mediation requirement, which is a condition precedent to arbitration, is conterminous with the scope of the arbitration provisions. As such, the parties only agreed to arbitrate disputes that were first mediated—and vice-versa.

Plaintiffs' claims for indemnification/advancement (Count II), defamation/slander (Count VIII), and malicious prosecution (Count IX) are outside the scope of claims that could be subject to the mediation/arbitration provisions, and thus are not subject to mediation/arbitration. *See* ECF No. 16. Likewise, Crump's breach of contract claim (Count III) and New York City Freelance Isn't Free Act claim (Count IV) are outside the scope of the mediation/arbitration provisions because they arise from Augustus's breach of a separate, independent contractor agreement that: (i) pre-dates Crump's employment relationship and the employment agreement requiring mediation/arbitration, and (ii) does not require mediation or arbitration. *See* April 19, 2019 Engagement Agreement, attached as **Exhibit A**. Finally, Plaintiffs' wiretap (Count X) and nuisance (Count XI) claims in the First Amended Complaint are not arbitrable because they are based on conduct by Augustus occurring *after* Crump's and Pacelli's termination, and thus are outside the scope of the employment agreements altogether.

To the extent any of Plaintiffs' claims *could* be considered within the scope of the mediation/arbitration provisions (and they are not), Defendant waived its right to mediate/arbitrate such claims by filing suit against Plaintiffs in New York state court on January 14, 2020 without first seeking to mediate or arbitrate its claims. ECF No. 8 at 9-16.

3. **Defendant's Legal Arguments Concerning California Labor Code § 925 Lack Merit and Do Not Avoid the Need for a Hearing on Where Crump Performed His Services.**

In its March 20, 2020 letter (which was filed without leave of Court, in violation of the Court's Individual Rules), Defendant asserts several new (and flawed) arguments that it contends obviate the need for the Court-ordered evidentiary hearing to resolve the limited factual question of whether Crump primarily worked in California. Defendants' arguments are unavailing and should be rejected.

Defendant contends that certain alleged judicial admissions by Crump preclude the application of California Labor Code § 925 on the basis that § 925 applies only to claims that arose in California and Crump has "judicially admitted that his claims against Defendant arise in New York." ECF No. 35 at 2. But there was no such admission. The allegations that Defendant asserts in support of its misplaced claim relate to venue and jurisdiction, and simply aver that some of Defendant's wrongful acts occurred in the State of New York. *See id.* (citing ECF No. 1 at ¶¶ 9-10; ECF No. 24 at ¶¶ 10-11). That same conduct, however, could (and does) subject Defendant to venue and jurisdiction elsewhere. Thus, those allegations standing alone cannot establish as a matter of law that Crump's claims have no nexus to California, especially because claims can (and often do) "arise" in multiple jurisdictions. *See Cheeseman v. Carey*, 485 F. Supp. 203, 212 (S.D.N.Y. 1980) ("Courts have frequently found that claims arose in multiple districts"). To make that determination as a matter of law (as Defendant requests the Court to do here), the Court would have to have a separate evidentiary hearing on that issue.

3

At issue before the Court are Crump's claims for fraudulent inducement (Count I), breach of contract with respect to his employment agreement (Count V), and failure to pay wages (Count VI). Crump's fraudulent inducement claim arose in California. The "place of wrong" for that tort claim is the "place where the last event necessary to make the actor liable occurred." *Schultz v. Boy Scouts of America, Inc.*, 480 N.E. 2d 679, 682-83 (N.Y. 1985). Here, that was California, where Crump relied on Defendant's misrepresentations by executing his employment agreement, ECF No. 24 at 25, which was addressed to, and signed by, him in California. Crump's contract and wage claims (Counts V and VI, respectively) arose in ***both*** California and New York because the quarterly bonus payment he seeks to recover is based on the entire body of his work, performed in both locations, which entitled him to that bonus.[1] The contract itself was made in California where the "last act necessary for its formulation," Crump's execution of the document,[2] took place. *Hoard v. U.S. Paint, Lacquer & Chem. Co.*, 253 N.Y.S. 2d 89, 90 (N.Y. Sup. Ct. 1964). To the extent that the primary place of Crump's performance is relevant to determining the jurisdiction in which the contract and wage claims arise, that issue must be resolved at a hearing.Defendant's reference to two claims alleged by Crump that arise under New York law (ECF No. 35 at 2) is misplaced. Crump's claim under the New York City Freelance Isn't Free Act is irrelevant to the analysis because it arises from work performed as an independent contractor under a different agreement with no arbitration provision. And Crump's New York state wage claim is based on the entirety of his work giving rise to his bonus entitlement; that work was performed in California and New York. To the extent Defendant is contending Crump cannot assert a New York statutory claim based on the work he primarily performed in California, that is a defense on the merits and is not properly before the Court on Defendant's motion to compel arbitration.

Because there has been no finding by the Court, based on an evidentiary record, that Crump's claims arose outside of California, Defendant's cases on this issue (*see* ECF No. 35 at 2) are inapposite. For example, in *Campbell v. FAF, Inc.*, 2019 WL 2574119, at **5-6 (S.D. Cal. 2019), the court found that the plaintiff did not primarily reside and work in California *only after* undisputed testimony and business records produced by the defendant showed that the bulk of the plaintiff's work took place outside of California. In *Felley v. America Fujikura Ltd.*, 2018 WL 3861574, at *1 (E.D. Cal. 2018), the plaintiff's claims arose entirely out of events and conduct occurring in South Carolina, with no relevant events alleged to have occurred in California. Crump's claims, by contrast, are based in whole or part on actions alleged to have occurred in California. Similarly, in *Career Partners, Inc. v. Brady*, 2020 WL 149606, *5 (N.Y. Sup. Ct. 2020), the court determined that the "alleged breaches of the confidentiality and non-solicitation clause [were] occurring in New York," not California. Moreover, *Brady* erroneously read § 925 as applying only to claims arising "solely" in California, despite the lack of such a limitation in the statute's plain text and the requirement to broadly construe Section 925 as a remedial statute. *See Naranjo v. Spectrum Sec. Servs., Inc.*, 235 Cal. Rptr. 3d 248, 257 (Cal. Ct. App. 2019).

---

[1] Crump's contractual signing bonus claim, however, arose solely in California. His entitlement to the signing bonus vested unconditionally when he signed the agreement and is not dependent upon other work he performed for Defendant. ECF No. 24 at ¶ 122

[2] Crump proffers that the employment agreement was initially signed by Defendant, then sent to, and signed by, him in California.

4

Defendant also asserts that Crump somehow waived the protection of § 925 by filing his claims outside of California. ECF No. 35 at 3. But the text of the statue contains no such express limitation, and Defendant cites no decisional authority in support of its limited reading.[3] Moreover, Defendant's narrow interpretation of the statute would conflict with California's "strong public policy" against forcing California employees to arbitrate outside of California, *see DePuy Synthes Sales Inc. v. Stryker Corp.*, 2019 WL 1601384, at \*3 (C.D. Cal. 2019), and would conflict with California law, which "generously construe[s] statutory . . . provisions in favor of protecting employee rights" because such laws are remedial in nature, *Naranjo*, 253 Cal. Rptr. 3d at 257. Moreover, the provision that violates § 925 purports to require Crump to **arbitrate** (not prosecute court litigation) in New York City, and Crump has never commenced any arbitration in New York City or otherwise relied upon the provision in question.

Finally, Defendant's claim that federal courts sitting outside of California have no basis to "ignore an otherwise enforceable forum selection clause like those at issue here" (ECF No. 35 at 3) is misplaced. As Defendant itself concedes, its argument applies only to "enforceable" forum selection clauses. However, Crump's challenges the enforceability of the forum selection clauses under § 925. Thus, there is no basis at this time to find as a matter of law that the forum selection clauses are enforceable. The two unreported, non-California cases that Defendant cites in support of its claim (*see* ECF No. 35 at 3) arose in the inapposite context of motions to dismiss for improper venue or to transfer venue. In that context, the courts were considering whether to send actions to another jurisdiction, not whether an arbitration clause in an employment agreement was enforceable under California law pursuant to § 925. Moreover, neither of those cases addressed New York's choice of law principle that defers to California's strong public policy if California "would be the state of the applicable law in the absence of an effective choice of law by the parties." *Business Incentives Co., Inc. v. Sony Corp. of America*, 397 F. Supp. 63, 67 (S.D.N.Y. 1975).

\*   \*   \*

For the foregoing reasons, Plaintiffs respectfully request that: (i) the Court determines that arbitrability decisions were not delegated to the arbitrator; (ii) the Court determines that the mediation provisions have no legal effect on the arbitrability issue before the Court; and (iii) the Court denies Defendant's request to cancel the evidentiary hearing currently scheduled to determine the limited factual issue of whether Crump primarily worked in California pursuant to California Labor Code § 925.

Sincerely,

Gabriel Levinson

Enclosure (as stated)

---

[3] Defendant cannot rely on mere legislative history (*see* ECF No. at 3) to add limitations that are not reflected in § 925's text. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018) ("legislative history is not the law.").